UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONELL NICHOLS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 23-cv-3157 |
| | : | |
| E. JUDDUE, *et al.*, | : | |
| Defendants. | : | |

MEMORANDUM

Joseph F. Leeson, Jr.
United States District Judge                                         October 27, 2023


Plaintiff Ronell Nichols, a pretrial detainee currently incarcerated at the George W. Hill

Correctional Facility ("GWH") who is proceeding *pro se*, brings this civil action pursuant to 42

U.S.C. § 1983, alleging violations of his constitutional rights based on events that occurred at

GWH.  Currently before the Court are Nichols's Complaint ("Compl." (ECF No. 2)), his Motion

for Leave to Proceed *in Forma Pauperis*, and his prisoner trust fund account statement. [1]  (ECF

Nos. 1, 3.)  Nichols asserts claims against the following Defendants: Correctional Officers

("CO") E. Juddue, O. Dwomoh, S. Davies, S. Young, S. Jackson, McFadden, Barclay,[2] and A.

Gowah, and Warden Laura Williams.  (Compl. at 2-4.)  Nichols asserts his claims against all

Defendants in both their individual and official capacities.  (*Id.*)  For the following reasons, the

---

[1] Nichols filed an inmate account statement dated July 19, 2023 reflecting account activity beginning on June 19, 2023.  (ECF No. 3.)  In his Complaint, Nichols alleges that he entered GWH on June 19, 2023.  (ECF No. 2 at 14.)  The Court deems the account statement to be in substantial compliance with 28 U.S.C. § 1915(a).

[2] At times, Nichols refers to a Defendant "Barkely."  The Court understands Nichols to be referring to one individual.

Court will grant Nichols leave to proceed *in forma pauperis*. The Court will allow Nichols to proceed on his deliberate indifference claims against Defendants Juddue, Dwomoh, Davies, Young, and Jackson.  The Court will dismiss Nichols's official capacity claims, his failure to protect claims against Defendants McFadden, Gowah, and Barclay, and his claims against Warden Laura Williams without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Nichols will be granted the option of proceeding on his deliberate indifference claim against the Defendants identified or filing an amended complaint to correct the deficiencies in his Complaint described herein.

## I.    FACTUAL ALLEGATIONS[3]

Nichols's claims arise from repeated instances in which his requests for assistance and protection addressed to various correctional officers at GWH were allegedly ignored.  The Court understands him to be asserting claims under the Fourteenth Amendment for deliberate indifference to his serious medical needs and for failure to protect.

The majority of events giving rise to Nichols's claims are alleged to have occurred at GWH between July 6, 2023 and July 11, 2023.  (Compl. at 8, 10.)  Specifically, Nichols alleges that on July 6, he told Defendants Juddue and Dwomoh that he was having suicidal thoughts and was thinking about hanging himself and asked that he be allowed to seek medical attention.  (*Id*. at 13, 14.)  These COs allegedly "blew [Nichols] off."  (*Id*. at 13.)  More specifically, Defendant Juddue allegedly told Nichols, "Fuck you, lock in."  (*Id*. at 14.)  When Nichols repeated his request to Defendant Juddue later, Juddue allegedly told Nichols "Lock in or go to the hole, you pick."  (*Id*.)  Defendant Juddue also allegedly refused to provide Nichols with a grievance form

---

[3] The allegations set forth in this Memorandum are taken from Nichols's Complaint (ECF No. 2).  The Court adopts the pagination assigned by the CM/ECF docketing system.

when he requested one. (*Id*.) Nichols alleges that when the nurse came to his floor and he tried to contact her, Defendant Dwomoh threatened to place Nichols in the hole and not feed him if he continued. (*Id*.) Nichols alleges that on July 8, when he again tried to catch the nurse's attention about withdrawal from his medication and suicidal thoughts, Defendant Davies told him to take his medication and get out of the nurse's face. (*Id*.) Nichols alleges that he told Defendant Davies that he was not receiving medication and was having suicidal thoughts as a result, but Davies did not help him, but instead told him, "go lay down everything will be better tomorrow." (*Id*. at 13, 14.) Nichols alleges that on July 11, he told Defendants Young and Jackson that he was not receiving his medication and was experiencing suicidal thoughts, but they did nothing. (*Id*. at 13, 15.) Elsewhere in his Complaint, Nichols elaborates that between July 8 and July 11, he explained to certain COs that he had not received medication to treat his mental health problems since his arrival at GWH in mid-June and that he was experiencing suicidal thoughts. (*Id*. at 10.) Nichols alleges that in response, the COs laughed at him. (*Id*.) Nichols also alleges that the Defendant COs did not seek medical attention for Nichols when he told them he was experiencing suicidal thoughts, but instead locked him in his cell, and threatened to place him in the hole and withhold food. (*Id*. at 6.) On the night of July 11, Nichols attempted suicide by hanging in his cell. (*Id*. at 10.)

Nichols also describes an event that occurred on August 4, 2023. (*Id*. at 5, 20.) Nichols alleges that on that date, he advised correctional officers that he feared for his life on Unit 4C. (*Id*.) CO Price (not a named Defendant) allegedly instructed Defendant MacFadden to remove Nichols from Unit 4C. Defendants MacFadden, Gowah, and Barclay allegedly found the situation amusing and laughed at Nichols, allegedly disregarding the risk of serious harm Nichols

faced.  Defendant Barclay allegedly instructed Nichols to return to Unit 4C to retrieve his mattress, notwithstanding the risk of harm to Nichols in doing so.  (*Id*.)

Nichols asserts Fourteenth Amendment claims for failure to protect and for deliberate indifference to his serious medical needs.  (*Id*. at 7.)  He requests an award of money damages and implementation of training of COs about treatment of inmates with mental health issues.  (*Id* at 10.)

## II.    STANDARD OF REVIEW

The Court will grant Nichols leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Nichols is proceeding *pro se*,

---

[4] Because Nichols is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

The Court understands Nichols to be raising claims based on some of the named

Defendants' failure to obtain medical care for him despite his repeated requests for help because

of the suicidal thoughts he alleges he was experiencing in the absence of his regular mental

health medication.  He also raises a claim based on some named Defendants' failure to protect

him from an unidentified danger he feared while housed on Unit 4C at GWH.

The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  Additionally, "[a] defendant in a civil rights action must have personal

involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207

(3d Cir. 1988).

### A.    Official Capacity Claims

Nichols asserts official capacity claims against all of the Defendants, who are all alleged

to be employees of GWH.  Claims against City officials named in their official capacity are

indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66

(1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action

against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc.*

*Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than

name, to be treated as a suit against the entity." *Id.*  Thus, Nichols's official capacity claims against the Defendants are, in essence, claims against Delaware County, which operates GWH.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.* (quoting *Bielevicz*, 915 F.2d at 850).  Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim.  *See, e.g., Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

To the extent Nichols seeks damages from the Defendants in their official capacities, he has failed to allege facts that support *Monell* liability.  Nichols has not alleged that a municipal

6

policy or custom gave rise to the alleged constitutional violations.  Accordingly, any official

capacity claims against the Defendants are not plausible as alleged.  These claims will be

dismissed without prejudice and Nichols will be granted leave to file an amended complaint

which addresses the deficiencies identified.

**B.     Claims Against Warden Williams**

Nichols names Warden Williams as a Defendant in his Complaint but does not include

any factual allegations describing any conduct in which Williams engaged that may have giving

rise to Nichols's claims.  Thus, the nature of Nichols's claims against Williams is unclear.

Construing his Complaint liberally, however, Nichols may be attempting to assert a claim against

Williams based on her supervisory position as Warden at GWH.  There are "two general ways in

which a supervisor-defendant may be liable for unconstitutional acts undertaken by

subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on

other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he

or she "'with deliberate indifference to the consequences, established and maintained a policy,

practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel.

J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in

original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for"

an office or facility are insufficient to allege personal involvement in an underlying

constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*)

("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,'

7

and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Because Nichols has alleged no facts describing conduct that Williams engaged in, Nichols has not alleged a plausible supervisory liability claim against Defendant Williams. Because the Court cannot state with certainty that Nichols will never be able to state a supervisory liability claim – or some other claim – against Defendant Williams, Nichols will be granted leave to amend his claims against her.

### C.       Claims Based on Deliberate Indifference to Serious Medical Needs

Nichols claims that on several occasions, he advised Defendants Juddue, Dwomoh, Davies, Young, and Jackson that he had not been receiving the medication used to treat his mental health problems since his arrival at GHW (a roughly two-week period) and that as a result he was experiencing suicidal thoughts, specifically, thoughts about hanging himself. He further alleges that the named Defendants ignored his requests, did not obtain medical assistance for him but, to the contrary, discouraged and blocked his attempts to obtain care. He subsequently attempted suicide. He asserts a claim for deliberate indifference to his serious medical needs against these Defendants. This claim will be allowed to proceed.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The standard under

---

[5] As it appears that Nichols was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*,

the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

--------------------------------------

No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode*, 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Additionally, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").  "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Regarding claims based on the alleged failure to prevent an inmate's attempted suicide, the United States Court of Appeals for the Third Circuit has recognized that a "particular vulnerability to suicide" is a serious medical need.  *Colburn,* 946 F.2d at 1023.  To state a plausible claim for deliberate indifference related to an attempted suicide, a prisoner must allege that:  (1) he had a particular vulnerability to suicide; (2) the defendant prison officials knew of that vulnerability; and (3) the defendant prison officials acted with deliberate indifference to the prisoner's vulnerability.  *Shirey v. Ladonne*, No. 18-4960, 2019 WL 1470863, at *7 (E.D. Pa. Apr. 3, 2019) (denying motion to dismiss *pro se* prisoner's claim that the defendant prison official was deliberately indifferent to his suicidal tendencies) (citing *Palakovic v. Wetzel*, 854

F.3d 209, 223-24 (3d Cir. 2017)).  Nichols has plausibly alleged that Defendants Juddue, Dwomoh, Davies, Young, and Jackson were deliberately indifferent to Nichols's vulnerability to suicide.

Nichols alleges that on several occasions, he told Defendants Juddue, Dwomoh, Davies, Young, and Jackson that since his arrival at GWH, he had not been receiving his medication to treat his mental health issues and he was having suicidal thoughts, specifically, thoughts of hanging himself.  (Compl. at 13, 14).  This plausibly describes a "particular vulnerability to suicide."  *See Palakovic*, 854 F.3d at 230 (finding that declarations by mentally ill person that he is thinking about killing himself indicates a "particular vulnerability to suicide").   Whether the named Defendants knew of Nichols's particular vulnerability to suicide is less clear.  A "'prison official[ ] know[s] of a particular vulnerability to suicide where [he] ha[s] actual knowledge of a history of suicide attempts or a diagnosis identifying suicidal propensities.'"  *Shirey*, 2019 WL 1470863, at *8 (quoting *Palakovic*, 854 F.3d at 230).  Nichols's own specific references to being without his mental health medication and experiencing suicidal thoughts plausibly alleges that these Defendants were aware of Nichols's diagnosis identifying mental illness with associated suicidal propensities.  As to whether these Defendants were deliberately indifferent to Nichols's particular vulnerability to suicide, Nichols alleges that the named Defendants ignored his requests for medical attention him, threatened him, and blocked his efforts to seek medical attention.  A prison official may be deliberately indifferent to a prisoner's particular vulnerability to suicide where, *inter alia*, the "'defendant failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds.'"  *Shirey*, 2019 WL 1470863, at *8 (quoting *Palakovic*, 854 F.3d at 231).  Nichols has alleged that the named Defendants did not seek care for him despite his requests, and interfered with his efforts to seek care.  Nichols will be

permitted to proceed with his deliberate indifference claims against Defendants Juddue, Dwomoh, Davies, Young, and Jackson.

### D.      Claims Based on Failure to Protect

Nichols also alleges that Defendants McFadden, Gowah and Barclay ignored his requests for protection when he feared for his life while he was housed on Unit 4C at GWH.  He alleges that the Defendants laughed at him, delayed removing him from the Unit, and that Defendant Barclay required Nichols to return to the Unit to retrieve his mattress, notwithstanding the risk to Nichols's safety associated with doing so.  For the following reasons, Nichols has not stated a plausible failure to protect claim against Defendants McFadden, Gowah and Barclay and this claim will be dismissed.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard*, 399 F.3d at 166.  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).

In general, to allege a sufficiently culpable state of mind a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991);

*see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

In the context of suits against prison officials for failure to protect an inmate from harm caused by other inmates, the United States Court of Appeals for the Third Circuit has stated that where a prison official is deliberately indifferent to a pervasive risk of harm to an inmate, an inmate may obtain relief in a § 1983 action. *Young v. Quinlan*, 960 F.2d 351, 361 (1992) (superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). To be deliberately indifferent, a prison official must both "'know[ ] of and disregard an excessive risk to inmate health or safety.'" *Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011) (quoting *Farmer*, 511 U.S. at 834) (*per curiam*) (affirming dismissal of failure to protect claim where "[t]here is no suggestion that the Defendants had any prior warning or knowledge that Carter might be involved in an altercation with Nguyen, or that they were aware that Carter's cell door was unlocked"); *Bonner v. Sipple*, 392 F.Supp.3d 594, 599 (E.D. Pa. 2019) (failure to protect claim dismissed as not plausible where litigant did not allege how attack on him came about, what the defendant was in a position to see or do, or what the defendant did or did not do in connection with the attack to "allow" it to occur).

Here, Nichols alleges that he told COs McFadden, Gowah and Barclay that he feared for his life when he was housed on Unit 4C. He also alleges that non-Defendant CO Price instructed

Defendant McFadden to remove Nichols from the unit, but McFadden, and later Gowah only laughed and disregarded the instruction.  Nichols also alleges that when he was finally removed from the unit, Defendant Barclay instructed Nichols to return for his mattress, thereby subjecting him to potential harm.  These allegations are not sufficiently developed to support a plausible failure to protect claim.  Although Nichols refers to an individual that the Court discerns is an inmate who Nichols feared,[6] Nichols does not describe why he feared this individual, and does not allege that he explained to any of the COs the basis for his alleged fear for his personal safety.  He does not allege that the named Defendants were otherwise aware of any risk of harm to Nichols.  Significantly, Nichols does not allege that his fears were borne out and that he suffered an injury as a result of the Defendants' alleged failure to protect him.  Nichols has not stated a plausible claim that the Defendants failed to protect him from harm and this claim will be dismissed.  Nichols will be granted leave to amend this claim if he can do so to cure the deficiencies noted by the Court.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Nichols's request for leave to proceed *in forma pauperis.*  The Court will allow Nichols to proceed on his deliberate indifference claims against Defendants Juddue, Dwomoh, Davis, Young, and Jackson, and will dismiss Nichols's official capacity claims, his failure to protect claims against Defendants McFadden, Gowah, and Barclay, and his claims against Warden Laura Williams without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Nichols will be granted the option of

---

[6] In his Complaint, Nichols states "Mike Moore is trying to [ ] me to 4C when Aug. 4th, 2023 I had incident."  (Compl. at 20.)  The Court understands Nichols to be referring to an individual, possibly an inmate, who Nichols believed posed a threat to him.  Nichols should clarify this if he chooses to file an amended complaint.

proceeding on his deliberate indifference claim against the remaining Defendants or filing an

amended complaint to correct the deficiencies in his Complaint described herein.  An Order

follows, which shall be docketed separately.


**BY THE COURT:**


*/s/ Joseph F. Leeson, Jr.*

**JOSEPH F. LEESON, JR.**
**United States District Judge**