UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONELL NICHOLS, : | |
|    Plaintiff, : | |
| : | |
| v. : | No. 23-cv-3157 |
| : | |
| E. JUDDUE, *et al.*, : | |
|    Defendants. : | |

## MEMORANDUM

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　February 6, 2024
**United States District Judge**

      Currently before the Court are an Amended Complaint and Exhibits thereto (collectively "AC" (ECF Nos. 9, 10)) filed pursuant to 42 U.S.C. § 1983 by Ronell Nichols, who is alleging violations of his constitutional rights. Nichols is an unrepresented litigant recently released from custody at the George W. Hill Correctional Facility ("GWHCF"), where the events giving rise to his claims occurred. Nichols asserts claims against Correctional Officers ("CO") McFadden, A. Gowah, Barclay, and Ford, Ms. Dana (identified as a law librarian), and GWHCF Warden Laura K. Williams. (AC at 2-4.) Nichols asserts claims against these Defendants in their individual and official capacities. (*Id.*) For the following reasons, the Court will allow Nichols to proceed on his retaliation claim against Defendant Ford. Nichols's official capacity claims, his failure to protect claims against McFadden, Gowah, and Barclay, his access to courts claim against Ms. Dana, and his claims against Warden Williams based on alleged failure to respond to grievances will be dismissed with prejudice. Nichols's Thirteenth Amendment claims will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Nichols will be granted the option of proceeding on retaliation claim at this time or filing a second amended complaint to correct the deficiencies in his AC as described herein.

1

I.      **FACTUAL ALLEGATIONS**[1]

In his original Complaint, Nichols asserted claims against COs E. Juddue, O. Dwomoh, S. Davies, S. Young, McFadden, Barclay, and A. Gowah, as well as Warden Laura Williams. *See Nichols v. Juddue*, No. 23-3157, 2023 WL 7110704 at *1 (E.D. Pa. Oct. 27, 2023). Nichols asserted two claims – a deliberate indifference claim against several Defendants, who allegedly ignored Nichols's requests for medical care, and a failure to protect claim against other Defendants who allegedly ignored Nichols's assertions that he was in danger in his then current housing. As to the first, Nichols alleged that on several occasions, he told different COs that he had not received medication to treat his mental health issues and that he was experiencing suicidal thoughts. *Id*. He was ignored and ultimately attempted suicide by hanging. (*Id*.) Nichols also claimed that several of the named Defendants failed to protect him from unnamed danger that Nichols believed existed on his Unit. *Id*. at *2. Nichols did not allege any harm stemming from the alleged failure of the Defendants to heed his warnings. *Id*. Upon screening, the Court granted Nichols the option of proceeding on his deliberate indifference claims against Defendants Juddue, Dwomoh, Davies, Young, and Jackson. *Id*. at *7. Alternatively, he was granted the option to file an amended complaint to address deficiencies in his official capacity claims, his failure to protect claims, and his claims against Warden Williams, which the Court dismissed. *Id*. Nichols chose to file an amended complaint, which is ripe for screening.[2]

---

[1] The allegations set forth in this Memorandum are taken from Nichols's AC and the Exhibits thereto. (ECF Nos. 9, 10.) The Court adopts the pagination supplied by the CM/ECF docketing system. Additionally, the Court includes facts reflected in the publicly available state court docket, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] The Order accompanying the Court's screening Memorandum included instructions for filing an amended complaint. In particular, the Order stated**, "If Nichols files an amended complaint, his amended complaint must be a complete document that includes all of the bases for Nichols's claims, including claims that the Court has not yet dismissed if he seeks to proceed on those claims. Claims that are not included in the amended complaint will not**

2

Nichols filled the Court's current standard form for a prisoner asserting civil rights violations. (*See* AC). He included with the form handwritten pages describing each Defendant's participation in the events giving rise to his claims and included additional handwritten pages with his Exhibits. (*Id.* at 15-20; ECF No. 10 at 1-3.) He also included five completed GWHCF grievance forms. (ECF No. 10 at 4-8.)

Nichols alleges that the events giving rise to his claims occurred on Unit 4C, in the Intake Unit, and at the law library at GWHCF on various dates from August 2023 through November 2023. (AC at 5.) In short, he claims that the named Defendants failed to protect him and interfered with his access to the law library, that despite being so advised through grievances, Defendant Warden Williams did nothing to curtail the conduct complained of, and that his prison employment amounts to slavery, all in violation of Nichols's rights.

Nichols alleges that on August 4, 2023, while on the Unit 4 hallway, he informed CO A. Gowah that he feared he was about to be stabbed for his commissary. (*Id*. at 19.) In response, Gowah, allegedly laughed at Nichols. (*Id*.) Nichols also alleges that he told CO McFadden that he faced a substantial risk of harm and that in response, McFadden laughed at him, rather than removing Nichols from his then current situation. (*Id*. at 17.) Nichols alleges the non-Defendant Price overheard the exchange and explained to McFadden that he was required to remove inmates from situations when they report a potential risk of harm. (*Id*.) Nichols also alleges that a non-Defendant John Doe went to lunch, leaving Nichols on Unit 4, but stating he would see where he could place Nichols. (ECF No. 10 at 3.) Later, Defendant Barclay allegedly instructed

---

**be considered part of this case."** (ECF No. 7 at 2.) (emphasis in original). Nichols did not include his deliberate indifference claims against Defendants Juddue, Dwomoh, Davies, Young, and Jackson in his AC. Those claims, therefore, are no longer part of this case.

3

Nichols to return to Unit 4 to retrieve his mattress, notwithstanding the danger posed to Nichols on that Unit. (*Id*.)

Nichols alleges that CO Ford would not permit him to go to the law library unless he pulled bags for inmates being discharged, cleaned the intake bathroom, and changed the trash cans. (*Id*. at 20.) He specifically alleges that on November 14, 2023, Ford did not permit him to go to the law library, though Nichols showed him materials from this Court concerning the filing of his amended complaint. (ECF No. 10 at 2.) He also alleges that Ford demanded to search through Nichols's folder before permitting him to go to the law library. (*Id*.) Ford also allegedly threatened to fire Nichols because he had weekly passes to go to the law library. (AC at 20.) Nichols alleges that Ford began interfering with his access to the law library after he filed a grievance regarding her conduct. (*Id*.) Nichols also alleges that Ms. Dana would not allow him extra time in the law library to work on the Amended Complaint in this civil action. (*Id*. at 18.)

Nichols alleges that he wrote many grievances concerning both Ford's and Ms. Dana's interference with his ability to use the law library, and that he directed these grievances to Defendant Williams. (*Id*. at 15.) He alleges that Williams did nothing to correct their conduct and the interference continued. (*Id*.) He also alleges that he sent Williams a grievance asserting that he was not being paid wages earned at his job in intake amounting to approximately $126.00. Nichols also alleges that he wrote grievances concerning incidents that occurred while he was working, including watching an inmate die by hanging, watching an unidentified "lady" die three times before paramedics arrived to take her to the hospital, and being forced to change the dirty clothes of an inmate experiencing detox. (*Id*. at 15; ECF No. 10 at 1.) He alleges that Williams did not respond to any of his grievances. (AC at 15.)

Nichols separately alleges that he was not paid for work performed. (*Id*. at 8; ECF No. 10 at 1.) He further alleges that while he was washing floors, inmates spit at him, and one nearly

4

attacked him. (ECF No. 10 at 1.) He alleges he is sometimes awakened to complete another inmate's shift. (*Id*.) He repeats that while working, he watched a man die by hanging, watched aa female inmate die three times before paramedics arrived, and was forced to change the clothes of another inmate. (*Id*.)

Nichols includes completed grievance forms with his Exhibits. The first, dated November 12, 2023, addresses his complaint that he was not paid for work performed. (ECF No. 10 at 4.) The second, dated October 5, 2023, addresses Defendant Ford's alleged mistreatment of Nichols, including threatening to fire him. (*Id*. at 5.) The third, dated November 6, 2023, addresses alleged interference with his access to the law library. (*Id*. at 6.) The fourth, dated November 14, 2023, addresses Defendant Ford's alleged interference with Nichols's access to the law library and her demand to search Nichols's legal materials. (*Id*. at 7.) The fifth, dated August 8, 2023, addresses Ms. Dana's alleged interference with Nichols's access to the law library. (*Id*. at 8.)

Based on the foregoing, Nichols asserts claims pursuant to 42 U.S.C. § 1983 for violation of his First, Sixth, Eighth, Thirteenth,[3] and Fourteenth Amendment rights. (AC at 4.) Nichols requests money damages and injunctive relief in the form of staff training about inmates' constitutional rights. (*Id*. at 8.)

## II. STANDARD OF REVIEW

The Court previously granted Nichols leave to proceed *in forma pauperis*, and his AC is therefore subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) which requires the Court to dismiss the AC if it fails to state a claim. Whether a complaint fails to state a claim under

---

[3] In his prayer for relief, Nichols seeks an award of money damages for, *inter alia*, "hard slavery making me work 24 hr shifts without pay." (AC at 6.) The Court liberally construes this as asserting a claim for violations of the Thirteenth Amendment.

§ 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Nichols is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.   DISCUSSION**

Nichols asserts constitutional claims based on alleged violations of his civil rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983

6

suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A. Official Capacity Claims

Nichols again asserts official capacity claims against the named Defendants, all of whom are alleged to be employees of GWHCF. As the Court previously explained, claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality, here, Delaware County. *See Nichols*, 2023 WL 7110704, at *3 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). Again, Nichols's official capacity claims against the Defendants are, in essence, claims against Delaware County, which operates GWHCF.

The Court previously described the elements of a municipal liability claim and explained why the Complaint did not state a plausible claim. *See Nichols*, 2023 WL 7110704 at *3. Nichols's AC, like his original Complaint, does not allege that a municipal policy or custom gave rise to any alleged constitutional violations. Therefore, Nichols has again failed to assert plausible official capacity claims. Because Nichols has already been given an opportunity to amend his claims and has failed to state a plausible claim a second time, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"). Nichols's official capacity claims will be dismissed with prejudice.

### B.     Fourteenth Amendment Failure to Protect Claims

Nichols claims that Defendants McFadden, Gowah and Barclay failed to protect him after he advised them that he believed himself to be in danger, in violation of his constitutional rights. This is the same claim he asserted against them in the original Complaint. *See Nichols*, 2023 WL 7110704, at *2. The Court previously described the elements of a Fourteenth Amendment failure to protect claim in the context of inmate-on-inmate violence. *Id.* at *6. Nichols's AC, like his original Complaint, alleges only that he advised Defendants McFadden and Gowah that he feared for his life and in response, these Defendants laughed at him, and that Defendant Barclay instructed Nichols to return to Unit 4 to retrieve his mattress after he had been removed from that Unit, despite the alleged danger. The only additional allegation included in the AC is that Nichols allegedly told Defendant Gowah that he feared he would be stabbed for his commissary. This is not sufficiently specific to put the COs on notice of a substantial threat to Nichols's safety. For example, Nichols does not identify the inmate who he believed was a threat to him, does not allege that he feared attack from an inmate with a propensity to violence, and does not allege that he feared attack from an inmate who held a grudge against him or who had tried to attack him previously. It follows that the named Defendants were unaware of a specific risk of substantial harm to Nichols, because no facts of this nature were conveyed to them. *See, e.g., Benson v. Delaware Cnty.*, No. 21-2854, 2023 WL 17251288, at *2-3 (E.D. Pa. Nov. 28, 2022) (pretrial detainee who alleged that a gang terrorizing his block, which had already stabbed another inmate and had identified him as their next target, and which had told other inmates about the planned attack and obtained a weapon, and who had, through verbal warnings and grievances advised correctional officers of the threat, stated a plausible failure to protect claim). Therefore, Nichols has again failed to state a plausible failure to protect claim. Because Nichols has already been given an opportunity to amend his claims and has failed to

state a plausible claim a second time, the Court concludes that further amendment would be futile.  *See Jones*, 944 F.3d at 483.  Nichols's failure to protect claims against McFadden, Gowah, and Barclay will be dismissed with prejudice.

### C. Claims based on Denial of Access to Law Library

Nichols claims that he was denied access to the law library by Defendants Ford and Ms. Dana.  He also alleges that Ford began interfering with Nichols's access to the law library after he submitted a grievance about her engagement in this conduct.  Nichols asserts a First Amendment retaliation claim against Ford based on her conduct.  Read liberally, he could be asserting a First Amendment access to the courts claim against both Ford and Ms. Dana.

#### 1. Retaliation Claims Against Ford

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a grievance is constitutionally protected conduct.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).  Conduct is adverse where it is sufficient "to deter a person of ordinary firmness" from engaging in protected conduct.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (reduced access to phone calls, commissary, recreation, confinement to cell for all but five hours per week, denial of access to rehabilitative programs, and inadequate access to legal materials and assistance could "deter a person of ordinary firmness from exercising his First Amendment rights") (citations omitted).

Nichols alleges that after he filed a grievance about Ford's interference with his access to the law library, she continued with this conduct and threatened to fire him. (AC at 20.) As noted, filing a grievance is protected conduct. Nichols alleges that he suffered adverse actions because of filing a grievance, including Ford threatening Nichols's prison employment and continued denial of access to the law library. (AC at 20.) Nichols has asserted a plausible retaliation claim against Ford and this claim will be served for a responsive pleading.

### 2. Access to Court Claim

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. *See also Presbury v. Wetzel*, -- Fed. App'x. --, No. 19-2586, 2020 WL 110234, at *1-2 (3d Cir. Jan. 9, 2020) (access to court claim denied where prisoner did not allege facts about merits of underlying claim or that he suffered an injury as a result of the alleged deprivation).

10

Nichols's claim fails because he has not alleged an actual injury that he suffered as a result of the alleged interference with his access to the law library. He makes no allegation that a nonfrivolous and arguable claim was lost due to the alleged denial of access to the law library. Indeed, he was able to file his amended complaint in this case and, if he felt as though he needed more time, he could have moved for an extension, which he did not do. Accordingly, this claim is not plausible and will be dismissed with prejudice.

### D. Claims Based on Grievances

Nichols asserts claims against Warden Williams based on her failure to investigate or respond to grievances that he filed. Nichols alleges that he submitted grievances raising retaliation, denial of access to the law library, and failure to protect him and never received a response from the Warden.[4] (AC at 7, 8, 15.) He claims in general that GWHCF "throws grievances away," that the grievance system does not work, and that GWHCF views inmates as slaves. (*Id*. at 8, 9.) As to Williams in particular, he claims that by virtue of having received his grievances, she had knowledge of violations of his constitutional rights and her failure to investigate or respond to his grievances amount to deliberate indifference. (*Id*. at 15.) His claims are not plausible.

Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Nichols about grievances do not give rise to a plausible basis for a constitutional claim. *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing

---

[4] As noted, Nichols includes completed grievance forms as Exhibits to his AC. (*See* ECF No. 10, at 4-8.)

constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))). Moreover, a prison official's involvement in the grievance process, alone, is not a sufficient basis for establishing personal involvement in the underlying constitutional violation as is necessary to state a § 1983 claim.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").  Nichols's claims against Williams based on her non-response to grievances are not plausible and will be dismissed with prejudice.

### E.  Claims Based on Non-Payment of Wages and Intake Unit Employment

Nichols alleges that he was not paid for work performed, that he "work[ed] two people shifts all week," that he worked "24 hr shifts without pay," and that he has been awakened from sleep to work other inmates' shifts. (AC at 6, ECF No. 10 at 1, 2.)  He alleges that Defendant Ford would not permit him to go to the law library unless he "pulled bags" for inmates being discharged, cleaned the intake unit bathroom, and emptied all of the trash cans.  (AC at 20.)  He also alleges that while working in the intake unit, he was subjected to untenable working conditions, including witnessing an inmate hang himself, watching an individual die three times before paramedics arrived, being spit at by other inmates, and being forced to change the cloths of an inmate covered with feces.  (AC at 15; ECF No. 10 at 1.)  Nichols asserts that his

employment amounted to slavery. (AC at 6.) The Court construes this as a Thirteenth Amendment claim.

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend XIII, § 1. The purpose of the Amendment "'was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States.'" *McGarry v. Pallito*, 687 F.3d 505, 510-11 (2d Cir. 2012) (quoting *Pollock v. Williams*, 322 U.S. 4, 17-18 (1944) (reversing dismissal of pretrial detainee's complaint where litigant alleged that long hours of work in prison laundry were compelled by physical and legal coercion). Pretrial detainees, who are not "duly convicted," are protected under the Thirteenth Amendment, whose prohibitions extend to institutions housing pretrial detainees. *McGarry*, 687 F.3d at 511. The Supreme Court has defined involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use of or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kazminski*, 487 U.S. 931, 952 (1988). Thus, some form of coercion is required.

Additionally, the nature and amount of work performed by the pretrial detainee must be considered. In *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) the court held that while a pretrial detainee could be compelled to perform "some service" in the prison, such as "general housekeeping responsibilities" consistent with the Due Process Clause, a determination as to whether the work conditions violated the Thirteenth Amendment or the Due Process Clause required an assessment of "the nature of the services that [plaintiff] was required to perform [while a pretrial detainee] and the amount of time they took." *Id.* at 242. The Court found that dismissal of the complaint before service was premature where the inmate, who was held for a

13

time as a pretrial detainee, alleged that during that time he was required to work in the prison cafeteria in violation of Thirteenth Amendment and the record was inadequate to evaluate those claims. *Id. See also McGarry*, 687 F.3d at 514 (correctional institutions may require inmates to perform personally related housekeeping chores but may not compel them to perform work "for another") (citations omitted).

Nichols alleges that he worked in the intake unit and was not paid for work performed. He further alleges that he "work[ed] two people shifts all week," that he worked "24 hr shifts without pay," and that he has been awakened from sleep to work other inmates' shifts. (AC at 6, ECF No. 10 at 1, 2.) He does not allege who required him to perform this work or how he was compelled to do it. Moreover, he alleges that he quit this job, calling into question the involuntary nature of his employment. (AC at 8.) *See Smith v. Dart*, 803 F.3d 304, 314-15 (7th Cir. 2015) (affirming dismissal of Thirteenth Amendment claim by pretrial detainee where litigant volunteered to participate in program that permitted him to work and earn wages because alleged servitude was not involuntary). Nichols also alleges that Defendant Ford would not permit him to go to the law library unless he "pulled bags" for inmates being discharged, cleaned the intake unit bathroom, and emptied all of the trash cans. (AC at 20.) However, it is not clear that these tasks were related to the unpaid prison employment giving rise to his Thirteenth Amendment claim. As pled, Nichols's Thirteenth Amendment claim is not plausible. However, because Nichols may be able to state a plausible claim, he will be granted leave to amend this claim.

## IV.     CONCLUSION

For the reasons stated, the Court will allow Nichols to proceed on his retaliation claim against Defendant Ford. Nichols's official capacity claims, his failure to protect claims against McFadden, Gowah and Barclay, his access to courts claim against Ms. Dana, and his claims

against Warden Williams based on alleged failure to respond to grievances will be dismissed with prejudice. Nichols's Thirteenth Amendment claim will be dismissed without prejudice. Nichols will be granted the option of proceeding on his retaliation claim at this time or filing a second amended complaint to correct the deficiencies in his AC as described herein.[5] An appropriate Order follows, which shall be docketed separately.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**

---

[5] If Nichols chooses to file a second amended complaint, he may include his deliberate indifference claims against E. Juddue, O. Dwomoh, S. Davis, S. Young, and Jackson which were included in his original Complaint, and which the Court deemed plausible upon screening. *See Nichols*, 2023 WL 7110704, at *4-5.